# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Naomi Springer,

               Plaintiff,

                               Civ. No. 09-1439 (RHK/JJG)
                               **MEMORANDUM OPINION**
                               **AND ORDER**

v.

McLane Company, Inc.,

               Defendant.

Mark E. Dooley, Neaton & Puklich, PLLP, Chanhassen, Minnesota, for Plaintiff.

Alec J. Beck, Corie J. Tarara, Seaton, Beck & Peters, P.A., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff Naomi Springer has sued her former employer, Defendant McLane Company, Inc. ("McLane"), alleging pregnancy discrimination and reprisal in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* Presently before the Court is McLane's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

The relevant facts are not in dispute. McLane is a grocery company with a distribution center in Northfield, Minnesota. The center distributes groceries throughout the upper midwest, primarily to convenience stores. In July 2008, McLane hired Springer

as a "candy selector" at the Northfield center. A candy selector works on an elevated

production assembly line, selecting certain candy from pallets passing down the line and

placing it in "totes" in order to fill customer orders.

When Springer was hired, she was told that she would be a probationary employee

for her first 90 days, meaning that she would be held to a higher standard than regular

employees. In particular, she was advised that a probationary employee was subject to

termination in the event she had two or more unscheduled absences during the

probationary period. In addition, she was informed that the use of cell phones was

banned on the production floor.

On August 4, 2008, Springer called in sick and was given an unexcused absence.

The following day, she left work early after again becoming sick, and she was given

another unexcused absence. Later in the day on August 5, she went to her doctor and was

told that she was pregnant. When she came to work the following morning, August 6, she

informed her supervisor, Sue Ohman, of her pregnancy.

On August 7, Springer again called in sick. When she returned to work the

following day, Ohman notified her that any additional unscheduled absences during her

probationary period would result in her termination.

Slightly more than one month later, on September 15, 2008, Springer was at work

when she telephoned the father of her (unborn) child, Phil Boehne, during her morning

break. She mentioned that she had not felt the baby move for several days, and Boehne

told her to call her doctor. Springer did so and left a message for her doctor to call her

back on her cell phone.  She then went back to the production floor, where she received a call from her doctor's office a short time later.

The warehouse supervisor in training, Tyrone McGee, saw Springer on the production floor on her cell phone.  He approached her and yelled at her to either get off the phone or clock out.  Springer responded non-verbally to McGee by either holding up her index finger to him or holding up her entire hand, in a "talk to the hand" fashion.  McGee again told her to either hang up or clock out.  She responded, "Gladly," and then started walking down from the elevated production platform to clock out.  McGee followed behind, repeatedly insisting that she either hang up or clock out.  Springer finally responded, "Where do you think I'm going?"  She then finished her telephone call and clocked out.  For unknown reasons, McGee then demanded that Springer turn over her employee badge to him; she refused.  Instead, she told McGee that she was going to speak to human resources, located back upstairs.

As Springer walked toward the office of the human resources manager, Michelle Pufahl, McGee followed behind.  At the top of the staircase, just outside of Pufahl's office, he told Springer, "Have a seat, honey."  He then went into Pufahl's office and spoke to her for several minutes while Springer waited outside.  A few minutes later, McGee emerged, told Springer she could speak with Pufahl, and walked away.

Springer entered Pufahl's office visibly agitated.  She angrily told Pufahl and Michael Bodenbach, another McLane supervisor who was in Pufahl's office at the time, about her conversation with McGee.  Specifically, she said that "at five months pregnant,

3

I am not going to be told I cannot take a call from my doctor." Pufahl told her to sit down

and "watch her attitude." Springer retorted, "Don't tell me to calm down. This is the

health of my child and I need to go to the doctor." Pufahl told her that she could go to the

doctor and that she should return with a note. Springer went to her doctor's office later

that day and was told that it is uncommon to feel a baby moving so early in a pregnancy,

and all was well.

While at McLane the following day, Bodenbach apologized to Springer for "the

situation" with McGee, which he termed a "misunderstanding." Pufahl also apologized

later that same day. The following morning, Springer met with her supervisor, Ohman,

and told her that she had another doctor's appointment. Springer apparently had cleared

that appointment with Pufahl previously, although she is unable to remember exactly

when that occurred, and there is no dispute that she filled out a McLane "absentee form"

for the first time on the 17th. This doctor's visit was considered an unexcused absence by

McLane. On September 18, Springer's employment was terminated for "attendance

issues."[1]

Springer later commenced the instant action against McLane in Rice County

District Court, which McLane removed to this Court. In her Complaint, Springer asserted

---

[1] Notably, McLane has proffered no evidence – by affidavit or otherwise – indicating why Springer was terminated. Rather, it relies on a typewritten note created by *Springer* on the day of her termination stating that she was fired for "attendance issues." (See also Answer ¶ 11.) In fact, other than certain portions of Springer's deposition transcript and a somewhat bare-bones Affidavit from Springer, neither party has submitted evidence regarding the termination of Springer's employment. The evidentiary record before the Court, therefore, is extremely limited.

four claims: pregnancy discrimination (Count I), disability discrimination (Count II), and reprisal (Count III), all in violation of the MHRA; and negligent supervision (Count IV). McLane now moves for summary judgment on each of Springer's claims.[2]

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

---

[2] In response to McLane's Motion, Springer has abandoned her disability-discrimination claim (Count II). (See Mem. in Opp'n at 5.)

**ANALYSIS**

**I.      The discrimination claim (Count I)**

Count I alleges that McLane's decision to terminate Springer's employment was motivated, at least in part, by her pregnancy.  Under the MHRA, an employer may not terminate an employee based upon his or her sex.  Minn. Stat. § 363A.08, subd. 2.  The term "sex" is statutorily defined to include pregnancy.  Minn. Stat. § 363A.03, subd. 42.

In analyzing pregnancy-discrimination claims under the MHRA, courts "apply the principles developed in the adjudication of claims under Title VII because of the substantial similarities between the two statutes."  Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997); accord, e.g., Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 809 (8th Cir. 2007) ("The Pregnancy Discrimination Act amended Title VII to provide that discrimination on the basis of pregnancy is a form of sex discrimination.  The [MHRA] includes the same prohibition, and the Minnesota courts apply the same Title VII analysis.").  Under Title VII, a plaintiff may prove a discriminatory discharge through either "direct evidence" or "indirect evidence."  Id. at 809-10; Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).  Since direct evidence – that is, evidence "showing a specific link between the alleged discriminatory animus and the challenged decision," id. at 736 – is rarely available, most plaintiffs take the latter route.  E.g., EEOC v. Liberal R-II Sch. Dist., 314 F.3d 920, 922-23 (8th Cir. 2002).  In that situation, the well-known McDonnell Douglas burden-shifting framework applies.  Fjelsta, 488 F.3d at 810.

Here, Springer has conceded a lack of direct evidence, focusing her argument on

McDonnell Douglas.  (See Mem. in Opp'n at 3.)[3]  Hence, she must first state a *prima*

*facie* case of discriminatory termination, which requires her to proffer evidence indicating

that (1) she is a member of a protected class, (2) she was qualified for the position she

was performing, (3) she was discharged, and (4) the discharge occurred under

circumstances giving rise to an inference of discrimination.  E.g., Shaffer v. Potter, 499

F.3d 900, 905 (8th Cir. 2007).  If she makes out a *prima facie* case, a presumption of

discrimination arises that may be rebutted by McLane offering a legitimate, non-

discriminatory reason for its actions.  E.g., Lewis v. Heartland Inns of Am., L.L.C., __

F.3d __, 2010 WL 184087, at *3 (8th Cir. Jan. 21, 2010).  The burden then "returns to

[Springer] to prove that [McLane's] proffered reason for firing her is pretextual."  Id.

Springer's claim falters on McDonnell Douglas's fourth prong, because she cannot

show that her termination occurred under circumstances giving rise to an inference of

discrimination.  To satisfy this prong, Springer argues that other employees missed as

much work during their probationary periods but were not fired.  (Mem. in Opp'n at 4.)

The use of "comparators" is a tried-and-true method of satisfying the fourth prong of the

*prima facie* case, but such a comparison is relevant only if the "other employees" were

outside of the plaintiff's protected class.  See, e.g., Anderson v. Fairview Health Servs.,

---

[3] The only evidence proffered by Springer that even remotely resembles "direct evidence" is McGee's statement to Springer that she "[h]ave a seat, honey."  Yet, the statement has no obvious connection to Springer's pregnancy – indeed, there is no evidence before the Court indicating that McGee was even aware that Springer was pregnant – and is, in any event, a "stray remark."  Fjelsta, 488 F.3d at 809-10.

Inc., No. A07-1481, 2008 WL 3289269, at *3 (Minn. Ct. App. Aug. 12, 2008) (plaintiff

could satisfy fourth element of *prima facie* case by showing that "'other similarly

situated' employees who were not members of the protected class 'were not discharged

for nearly identical behavior'") (quoting Swanigan v. W. Airlines, Inc., 396 N.W.2d 607,

612 (Minn. Ct. App. 1986)); Watson v. Ceridian Corp., No. A03-853, 2003 WL

23024525, at *5 (Minn. Ct. App. Dec. 30, 2003) (same); Deerson v. Metal-Matic, Inc.,

423 N.W.2d 393, 396-97 (Minn. Ct. App. 1988) (same). The problem here is that

Springer has failed to proffer evidence to that effect.[4]

The only evidence pointed to by Springer is paragraph 7 of her Affidavit, in which

she states that "[d]uring my time at McLane Companies, Inc., two other individuals had

as many, if not more attendance issues during their probationary periods, and they were

not reprimanded." Yet, she nowhere states whether those "other individuals" were

pregnant (or not). In the absence of such information, the Court cannot tell if others

*outside the protected class* – namely, non-pregnant women – were treated more

favorably. Indeed, it is entirely possible that these "other individuals" were also pregnant

and were not fired for excessive absenteeism; it would be unreasonable to infer that

Springer was fired *because of* her pregnancy in such a situation. Simply put, any

comparison between Springer and these "other individuals" cannot give rise to an

---

[4] As the Eighth Circuit recently noted in Lewis, comparative evidence is not the *only* way
a plaintiff may satisfy the fourth prong of the *prima facie* case. 2010 WL 184087, at *5. In this
case, however, it is the only argument Springer has made. And where "comparative evidence is
relied on by a plaintiff to support the final element of her prima facie case, courts of course
require such proof." Id.

8

inference of discrimination, because such a comparison would not shed light on whether pregnancy factored into McLane's decision to terminate her employment. Insofar as it is Springer's burden to show that similarly situated employees outside her protected class were treated more favorably, e.g., Gilooly v. Mo. Dep't of Health & Senior Servs., 421 F.3d 734, 738-39 (8th Cir. 2005), this omission is fatal to her claim. See, e.g., Mann v. Frank, 7 F.3d 1365, 1370 (8th Cir. 1993) (no *prima facie* case where plaintiff "compar[ed] her treatment to that of a member of the same protected class"); Smythe v. Potter, No. 4:05CV1471, 2007 WL 1231690, at *8 (E.D. Mo. Apr. 25, 2007) (claim failed at fourth prong of *prima facie* case where plaintiff "presented no evidence . . . demonstrating that any other Postmaster or postal service employee not within his racial class remained employed with the USPS"); Twymon v. Wells Fargo & Co., 403 F. Supp. 2d 921, 944 (S.D. Iowa 2005) ("Twymon did not testify (or offer any other evidence) that the [alleged comparator] was not black. Therefore, Twymon has failed to show the individual she claims was treated differently was outside her protected class.").

Besides failing to specify whether her (alleged) comparators were outside of her protected class, Springer's claim also fails because she has not *specifically* identified who her purported comparators were. A plaintiff "cannot just vaguely refer in [an] affidavit . . . to unidentified . . . employees [outside her protected class] whom she claims were treated better than her to establish the fourth element of her *prima facie* case." Noriega v. BRC Rubber Group, Inc., No. 1:04-CV-0057, 2005 WL 3132348, at *6 (N.D. Ind. Nov. 22, 2005). Rather, specifically identifying similarly situated employees "is an essential

9

piece of the prima facie case, and without this evidence [a plaintiff's] claim must fail."

Kriescher v. Fox Hills Golf Resort & Conference Ctr., 384 F.3d 912, 916 (7th Cir. 2004).

There is a strong prudential reason for such a requirement:  in the absence of identifying

information, the Court cannot assess whether the other employees alluded to by the

plaintiff truly were similarly situated.  E.g., Tucker v. Franciscan Villa, Inc., No. 06-CV-

312, 2007 WL 2703194, at *8 (N.D. Okla. Sept. 17, 2007); Jean-Francois v. Anderson,

Civ. No. 5:07-CV-34, 2008 WL 5272864, at *9 (M.D. Ga. Dec. 18, 2008) (deeming this

an "obvious problem").  In the absence of any specifically identified comparators,

Springer's claim falters.  See, e.g., Alvarez v. Royal Atl. Developers, Inc., 574 F. Supp.

2d 1301, 1309-10 (S.D. Fla. 2008) (no *prima facie* case where plaintiff did not

"specifically identify – or present any evidence of – any similarly situated employees or

comparators to herself"); Bryant v. Fort Wayne Metro. Human Relations Comm'n, No.

1:06-CV-261, 2007 WL 2479337, at *11 (N.D. Ind. Aug. 28, 2007) (plaintiff failed at

fourth stage of *prima facie* case by "vaguely referring to unidentified male employees and

making conclusory allegations that they were treated better than her").[5]

---

[5] Springer's failure in this regard is "especially damaging" given that she had the full panoply of discovery devices available to her.  Batchelor v. Merck & Co., 651 F. Supp. 2d 818, 835 (N.D. Ind. 2008) (claim failed where plaintiff did not proffer evidence showing that alleged comparator was similarly situated, since she "had the opportunity in discovery to subpoena nearly all of [the comparator's] work evaluations, . . . [b]ut she failed to do so").

For these reasons, the Court concludes that Springer has failed to make out a *prima facie* case of pregnancy discrimination, and it will grant McLane's Motion as to Count I.[6]

## II.     The reprisal claim (Count III)

As with a discrimination claim, an MHRA reprisal claim can be proven with either direct evidence or indirect evidence. See, e.g., Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006); Minell v. City of Minnetonka, No. A08-2183, 2009 WL 2928317, at *6 (Minn. Ct. App. Sept. 15, 2009). And as with her discrimination claim, Springer takes the latter route. (See Mem. in Opp'n at 5.)

In order to establish a *prima facie* case of reprisal, a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there exists a causal connection between the two. E.g., McLain v. Andersen Corp., 567 F.3d 956, 969 (8th Cir. 2009); King v. Hardesty, 517 F.3d 1049, 1064 (8th Cir. 2008).[7] The Court assumes *arguendo* that Springer has stated a *prima facie* case of reprisal here. McLane has proffered a legitimate, non-discriminatory reason for Springer's termination: excessive absenteeism during her probationary period. Hence, the burden rests with Springer to show that McLane's proffered reason was

---

[6] The same shortcomings would doom Springer's claim at the pretext stage even if she had successfully stated a *prima facie* case. See, e.g., Tucker, 2007 WL 2703194, at *8 (no showing of pretext where plaintiff failed to specifically identify alleged comparators).

[7] Although the MHRA uses the term "reprisal" rather than "retaliation," such claims are analyzed in the same fashion as retaliation claims under federal employment statutes like Title VII. See, e.g., Carraher v. Target Corp., Civ. No. 05-2385, 2006 WL 2882345, at *7 n.13 (D. Minn. Oct. 5, 2006) (Kyle, J.), aff'd, 503 F.3d 714 (8th Cir. 2007); Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999).

pretextual. To do so, she may (1) demonstrate that McLane's proffered reason is "unworthy of credence" or (2) "persuad[e] the court that a [prohibited] reason more likely motivated" her termination than the proffered reason. Stallings v. Hussmann Corp., 447 F.3d 1041, 1052 (8th Cir. 2006). Stated differently,

> [a]n employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before [s]he was terminated, that similarly situated employees . . . were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

Id.[8]

Springer first attempts to show pretext by pointing out that her employment was terminated shortly after her complaint to Pufahl. Yet, "timing alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse employment action." Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 916 (8th Cir. 2006). This is particularly true where, as here, there exists "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity." Hervey v. County of Koochiching, 527 F.3d 711, 723 (8th Cir. 2008) (citation omitted). Notwithstanding her contention to the contrary (see Mem. in Opp'n at 7), the record is clear that Springer had been counseled regarding her absences prior to her complaint about McGee's conduct. (See Springer Dep. Tr. at 149 ("Q: When you

---

[8] McLane's opening brief only obliquely referred to pretext *vis-a-vis* Springer's reprisal claim. (See Def. Mem. at 18-19.) Nevertheless, Springer addressed pretext in her response (see Mem. in Opp'n at 7), so the issue is ripe for Court resolution even if McLane did not fully raise it initially. See, e.g., King, 517 F.3d at 1064 (court may grant summary judgment on issue raised *or discussed* by parties); Heisler v. Metro. Council, 339 F.3d 622, 631 (8th Cir. 2003).

came back on [August] 8th Sue Ohman told you that you couldn't miss any more time during your 90-day probationary period?  A: Yes, Sir.").)  Moreover, Springer's timing argument overlooks a critical fact:  she had what McLane deemed to be an "unexcused" absence on *the very same day* as her complaint about McGee, as well as another unexcused absence two days later (the day before her termination).  This lessens any possible inference of reprisal that might be drawn from the proximity between her complaint and the termination of her employment.[9]

Next, Springer argues that if McLane were "as serious about its attendance policy as it purports to be . . ., then it would follow logically that [she] would have been terminated immediately after her third absence [on August 29], not one month later." (Mem. in Opp'n at 7.)[10]  Yet, she also contends that she had cleared the August 29 absence in advance (see Springer Aff. ¶ 5; Springer Dep. Tr. at 193-95), and nothing in the record contradicts that allegation or indicates that McLane held this absence against her.  In other words, Springer is trying to have her cake and eat it, too – she argues that McLane should have fired her for this absence while at the same time averring that the absence was approved in advance and, accordingly, should not have provided a basis for her termination.

---

[9] Springer avers that she "was lead [*sic*] to believe" that these were excused absences. (Springer Aff. ¶ 6.)  But she does not explain the basis for that belief, nor does she proffer any evidence indicating that the absences should have been excused under McLane's attendance policy.

[10] Springer apparently missed all or part of the work day on August 29 for a dentist appointment.

At bottom, the record is devoid of evidence from which a reasonable fact-finder

could conclude that McLane's proffered reason for Springer's termination was a pretext

for reprisal. There is no dispute that Springer had several unexcused absences during her

probationary period. There is no evidence that she had received a favorable review

shortly before her termination – quite to the contrary, she had been counseled about her

absenteeism approximately a month earlier. She has proffered no persuasive evidence

indicating that others were treated more leniently despite excessive absenteeism. Nothing

indicates that McLane has shifted its explanation for the termination of her employment.[11]

And she acknowledges that the company took several steps to accommodate her while she

was pregnant, including allowing her to spend as much time as she needed in the

bathroom and not holding against her the failure to reach her production quotas on those

days. (Springer Dep. Tr. at 123-25.)

Simply put, the record, taken as a whole, does not support the contention that

Springer was fired for anything other than excessive absenteeism. Accordingly, her

reprisal claim will be dismissed.

---

[11] In fact, Springer offered no evidence as to who made the termination decision. Hence, it is impossible to discern whether that decision-maker was even aware of her complaint regarding McGee's conduct. See Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 645 (8th Cir. 2009) (no inference of discrimination where decision-makers were unaware of protected activity); White v. Ark. Dep't of Health & Human Servs., No. 5:04CV0318, 2006 WL 229896, at *9 (E.D. Ark. Jan. 30, 2006) (plaintiff could not establish *prima facie* case of retaliation absent evidence that "the decision-makers responsible for the adverse employment action knew about the plaintiff's protected activity").

## III.    The negligence claim (Count IV)

Count IV alleges that McLane was negligent in supervising its managers and employees and that such negligence resulted in the discrimination and retaliation alleged in Counts I and III.[12]  McLane argues that this claim is preempted by the MHRA.  (See Def. Mem. at 19.)  Springer has failed to respond to that argument, and the Court concludes that it has merit.

MHRA preemption has been discussed extensively in recent decisions of this Court.  See, e.g., Burns v. Winroc Corp. (Midwest), 565 F. Supp. 2d 1056, 1068-69 (D. Minn. 2008) (Tunheim, J.); Hollen v. USCO Distribution Servs., Inc., Civ. No. 02-1119, 2004 WL 234408, at *8-9 (D. Minn. Feb. 3, 2004) (Tunheim, J.); LaCanne v. AAF McQuay, Inc., Civ. No. 00-1773, 2001 WL 1344217, at *3 (D. Minn. Oct. 30, 2001) (Frank, J.); Pierce v. Rainbow Foods Group, Inc., 158 F. Supp. 2d 969, 974-76 (D. Minn. 2001) (Alsop, J.); Williams v. Thomson Corp., Civ. No. 00-2256, 2001 WL 1631433, at *2-3 (D. Minn. Aug. 13, 2001) (Davis, J.); Moss v. Advance Circuits, Inc., 981 F. Supp. 1239, 1252 (D. Minn. 1997) (Doty, J.).  After some initial confusion regarding the issue, see Pierce, 158 F. Supp. 2d at 974-75 & n.2 (noting four different approaches taken by judges of this Court) – which resulted largely from the difficulty reconciling the Minnesota Supreme Court's decisions in Vaughn v. Northwest Airlines, Inc., 558 N.W.2d

---

[12] Both parties describe Count IV as alleging negligent supervision *and hiring*.  (See Def. Mem. at 19; Mem. in Opp'n at 7.)  The Complaint makes no mention of negligent hiring, however.  Regardless, for the reasons set forth below, the claim fails whether it alleges negligent supervision and hiring or negligent supervision alone.

736 (Minn. 1997), Williams v. St. Paul Ramsey Medical Center, Inc., 551 N.W.2d 483

(Minn. 1996), and Wirig v. Kinney Shoe Corp., 461 N.W.2d 374 (Minn. 1990) – a

consensus appears to have emerged.  It is now generally recognized that the MHRA

preempts "a common law cause of action if: (1) the factual basis and injuries supporting

the common law claim also would establish a violation of the MHRA; and (2) the

obligations the defendant owes to the plaintiff, as a practical matter, are the same under

both the common law and MHRA."  Peltonen v. Branch No. 9, Civ. No. 05-605, 2006

WL 2827239, at *5 (D. Minn. Sept. 29, 2006) (Frank, J.) (citing Pierce, 158 F. Supp. 2d

at 975-76); accord, e.g., Hollen, 2004 WL 234408, at *9; Williams, 2001 WL 1631433, at

*2-3; McKenzie v. Lunds, Inc., 63 F. Supp. 2d 986, 1005-07 (D. Minn. 1999) (Tunheim,

J., adopting Report & Recommendation of Erickson, M.J.).  The Court agrees.[13]

Applying this standard here, Springer's negligence claim fails.  The factual basis

for, and Springer's alleged injuries from, McLane's alleged negligence and Springer's

MHRA claims are the same.  Moreover, absent the MHRA (or its federal analogue), there

exists no independent duty to protect an employee from discrimination or retaliation.  See,

e.g., Burns, 565 F. Supp. 2d at 1069; Williams, 2001 WL 1631433, at *2-3.  The claim,

therefore, is preempted.  See, e.g., Peterson v. Ford Motor Co., Civ. No. 03-5027, 2005

WL 419693, at *6 (D. Minn. Feb. 17, 2005) (Frank, J.); Gonzalez v. City of Minneapolis,

---

[13] Adding to (or perhaps further demonstrating) the confusion on this issue, the undersigned declined to adopt this standard in Klaahsen v. APCOA/Standard Parking, Inc., Civ. No. 02-620, 2002 WL 1397041, at *8 (D. Minn. June 26, 2002), but yet largely adopted the substance thereof in Cook v. Domino's Pizza, L.L.C., Civ. No. 01-500, 2001 WL 821952, at *3 (D. Minn. July 17, 2001).

267 F. Supp. 2d 1004, 1016 (D. Minn. 2003) (Magnuson, J.); <u>Sullivan v. Spot Weld, Inc.</u>,

560 N.W.2d 712, 717 (Minn. Ct. App. 1997).

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 15) is

**GRANTED** and Plaintiff's Amended Complaint (attached to Doc. No. 1) is

**DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: February 11, 2010                                     s/Richard H. Kyle
                                                             RICHARD H. KYLE
                                                             United States District Judge